UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

    Sharon C. Ward, and              Case No. 13-31965-GMH
    Anthony D. Ward,

          Debtors.                  Chapter 13

---

In re:

    Candace R. Simpson,             Case No. 13-32016-GMH

          Debtor.                   Chapter 13

---

## DECISION

---

      Counsel for the debtors, Credit Solutions, S.C., has appealed my rulings that it is not entitled to post-dismissal orders directing the trustee to pay counsel's attorneys' fees out of the debtors' funds in her possession. Counsel has also moved in both cases under Federal Rule of Bankruptcy Procedure 8005 for a "stay"—really an injunction—prohibiting the chapter 13 standing trustee from distributing any of the debtors' funds that she has in her possession until counsel's appeals are resolved.

      For the reasons that follow, I grant counsel's motions. Although counsel's likelihood of succeeding on appeal is slight, there is no clear-cut answer to the underlying legal question. Allowing the trustee to distribute the debtors' funds in her possession while the appeals are pending threatens the appellate court's ability to grant effective relief, and enjoining the trustee from distributing those funds poses no significant threat of harm to others.

I

The debtors in these chapter 13 cases were represented by the same counsel. I dismissed both cases on the chapter 13 standing trustee's motion because the debtors failed to make pre-confirmation plan payments to the trustee as required under 11 U.S.C. §1326(a)(1). While the trustee's motions to dismiss were pending, counsel filed applications requesting that I allow it to recover its attorneys' fees as administrative expenses to be paid out of the funds that the Bankruptcy Code required the debtors to pay to the trustee before confirmation. See 11 U.S.C. §1326. In effect, the applications were counsel's effort to change the Code's default rule that a trustee must return "to the debtor" payments held by the trustee when a case is dismissed before confirmation. See §1326(a)(2); see also 11 U.S.C. §349(b)(3). Because counsel waited until the end of the objection period on the dismissal motions to file its applications, counsel's applications were not ripe for decision when the cases were dismissed. As a result, both cases were dismissed without action on counsel's fee applications.

After the cases were dismissed, counsel filed affidavits averring that no objections were received in response to its fee applications. I scheduled hearings on the applications for May 6, 2014. The cases were called separately, with the Wards' case called first. During the *Ward* hearing, counsel argued that even though the cases were dismissed, I still had authority to grant its application because the case was still open.

I explained that the Code's text appears to require counsel to obtain the court's approval of a fee application before a case is dismissed. When a plan is not confirmed, as when a case is dismissed before confirmation, §1326(a)(2) requires the chapter 13 trustee to return a debtor's pre-confirmation plan payments to the debtor, less approved administrative expenses. §1326(a)(2) ("If a plan is not confirmed, the trustee shall return any [pre-confirmation plan] payments . . . to the debtor, after deducting any unpaid claim allowed under section 503(b) [i.e., any allowed administrative

2

expense claim].”). In both the *Ward* and *Simpson* cases, however, no administrative expenses had been allowed when the cases were dismissed. As a result, I concluded that §1326 required the trustee to return the payments held by the trustee to the debtors, and §349(b)(3) revested the right to those payments in the debtors. Stating that I believed the revestment of the funds under §349 was intractable absent grounds to vacate the dismissal order under Bankruptcy Rule 9024, I denied the *Ward* fee application.

Following this explanation, counsel made no further argument in support of the fee application. Instead, counsel appeared to concede the point, saying only, “Sure. I understand. Okay.” Following a brief discussion of potential future alternative practices that would allow the court to consider a fee application before a case is dismissed, counsel stated, “It’s just a matter of getting [the application] in sooner. I understand.”

Ms. Simpson’s case was called next. I denied counsel’s application in the *Simpson* case on the same grounds that I denied counsel’s application in the *Ward* case: I indicated that it did not appear that I had the authority to approve counsel’s application and order the trustee to pay counsel from the debtor’s funds in her possession because when the case was dismissed the right to those funds revested in the debtor pursuant to §349(b)(3). Counsel made no argument opposing my ruling during the *Simpson* hearing. I subsequently entered orders in each case denying counsel’s applications for compensation.

Counsel timely filed motions to reconsider, invoking the bankruptcy analogs to Federal Rules of Civil Procedure 59 and 60. See Fed. R. Bankr. P. 9023 & 9024. Counsel also filed motions to enjoin the chapter 13 trustee from disbursing the debtors’ funds in her possession until I resolved the motions to reconsider. I granted the injunctive relief to ensure that reconsideration was not rendered moot, and I held a hearing on the

3

motions for reconsideration on May 27, 2014.

After considering the arguments of debtors' counsel and counsel for the trustee at the May 27 hearing, I denied the motions to reconsider because they failed to meet the applicable standards. Counsel's entire argument for reconsideration was that I had misapplied the law. Rule 60 does not afford an avenue for relief from a misapplication of the law; rather, the proper avenue for relief from a misapplication of the law generally is to appeal. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010)(evaluating Rule 60(b)(4)).

Rule 59, in contrast, provides an avenue by which a litigant can ask a trial judge to revisit an order on the grounds that the judge misapplied the law. Relying on Seventh Circuit precedent, I explained that "[r]ule 59(e) allows the movant to bring to the . . . court's attention a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). But "[a] 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" See *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). And Rule 59 may not be used to either "raise novel legal theories that a party [should have raised] in the first instance", *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995), "or advance arguments that could and should have been presented to the . . . court prior to the judgment", *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

In support of reconsideration, counsel for the first time cited trial-court decisions that have held that a bankruptcy court can consider requests to allow an administrative expense claim after a case is dismissed. See, e.g., *In re Garris*, 496 B.R. 343, 354–55 (Bankr. S.D.N.Y 2013); *In re Lewis*, 346 B.R. 89, 103–05 (Bankr. E.D. Pa. 2006); *In re Kent Funding Corp.*, 290 B.R. 471, 478 (Bankr. E.D.N.Y. 2003). But other

4

courts have suggested otherwise. See, e.g., *Iannini v. Winnecour*, 487 B.R. 434, 443 (Bankr. W.D. Pa. 2012); *In re Ragland*, No. 05-18142, 2006 WL 1997416, at *5–6 (Bankr. E.D. Pa. May 25, 2006); see also *In re Matthews*, No. 10-16869, 2012 WL 33213, at *2 (Bankr. E.D. Pa. Jan. 6, 2012), *vacated*, 12-414, 2012 WL 3263599 (E.D. Pa. Aug. 9, 2012). And it's far from clear that the concept of ancillary jurisdiction—on which some courts rely in adjudicating post-dismissal awards of attorneys' fees—is so broad to permit a bankruptcy court to allow an administrative expense claim to be paid from estate property after the case is dismissed, because, as a general matter, dismissal of the case terminates that estate. See *Lugo v. De Jesus Saez (In re De Jesus Saez)*, 721 F.2d 848, 851–52 (1st Cir. 1983). Compare *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–80 (1994) (taking narrow view of ancillary jurisdiction).

Counsel additionally cited a decision reasoning that §349(b)'s revesting principle does not apply to a debtor's payments to the trustee when those payments come from the debtor's post-petition wages. See *In re Garris*, 496 B.R. at 353. I noted, however, that other decisions disagree and have held that §349(b)'s principle applies equally to debtor property that was acquired after the petition was filed—including post-petition wages. See *Williams v. Marshall*, __B.R.__, No. 13-C-2326, 2014 WL 1457828, at *3–4 (N.D. Ill. April 11, 2014) (collecting authorities); *In re Hamilton*, 493 B.R. 31, 38–39 (Bankr. M.D. Tenn. 2013) ("Section 349(b)(3) is not ambiguous: At dismissal—unless the court, for cause, orders otherwise—all postpetition earnings of the debtor vest in the debtor."); see also *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413–14 (9th Cir. 1985).

Counsel also relied (for the first time) on *In re Lewis* to argue that when an application for compensation is pending "cause [exists] under §349 to order the funds to be paid according to §1326 and to [*sic*] the attorney fees approved by this Court." No. 13-31965, CM-ECF No. 50, at 5; No. 13-32016, CM-ECF No. 31, at 5. At the hearing,

5

counsel argued that because its applications were pending at the time these cases were dismissed, the court could find cause after the fact and alter the dismissal orders to indicate that the funds held by the trustee did not revest in the debtors. I explained that although a pending application for compensation may constitute cause under §349(b) to order that funds held by a chapter 13 trustee do not revest in a debtor upon dismissal, neither of the dismissal orders in these cases included such a provision. I rejected counsel's contention that the dismissal orders could be modified after-the-fact absent a proper showing under Rule 9024.

To address counsel's arguments in support of reconsideration fully, I further explained that counsel could not show that the denials imposed a "manifest injustice." No. 13-31965, CM-ECF No. 50 at 2; No. 13-32016, CM-ECF No. 31, at 2. Counsel could have (i) filed its fee applications sooner, so that those applications would have been ripe for decision before the cases were dismissed; (ii) filed a response to the motions to dismiss requesting inaction on those motions until counsel had an opportunity to request an allowance of its fees as administrative expenses; (iii) sought an expedited ruling on its fee applications; or (iv) requested that the court rule that the pending fee applications constituted cause to order that the debtors' payments held by the trustee would not revest in the debtors upon dismissal. Some of these courses have been followed by other counsel faced with similar circumstances; counsel here simply elected a different course. That election flunks any concept of manifest injustice. See *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Moro*, 91 F.3d at 876.

I finally noted that counsel's fee applications made no effort to explain how counsel's services were of value to the debtors, as required by 11 U.S.C. §330(a)(3) & (4). Given that the debtors' plans were never confirmed, any benefit that counsel's services provided to the debtors is not obvious. See *In re Fernandez*, 441 B.R. 84, 100 (Bankr. S.D. Tex. 2010) ("counsel must provide the Court with evidence of substantial,

6

valuable professional services including investigation, evaluation, and counseling that were intended and designed to achieve an objective appropriate for Chapter 13 cases"); see also *In re Phillips*, 291 B.R. 72, 74 (Bankr. S.D. Tex. 2003) ("[b]ecause the [Chapter 13] case was dismissed prior to plan confirmation, there was no apparent benefit to the Debtor"). I concluded that counsel's failure to support the applications provided an alternative ground that was independently adequate to deny reconsideration of the requested fee awards.

Based on the lack of controlling authority on the issues on which counsel sought reconsideration, the lack of uniformity among trial-court decisions, and the circumstances surrounding the denial of counsel's applications, I concluded that my denial of the fee applications, if error at all, was not "a manifest error of law or fact" and that counsel had not shown "manifest injustice". As a result, I denied both motions to reconsider. Counsel's notices of appeal and motions to stay the trustee from disbursing the debtors' funds pending appeal timely followed.

## II

The Seventh Circuit has instructed that a court must evaluate a motion for a stay pending appeal under Bankruptcy Rule 8005 by using a "sliding scale" approach similar to that used when considering whether to grant a preliminary injunction. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300–01 (7th Cir. 1997); cf. *Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013). A moving party must generally demonstrate that it (1) has a likelihood of success on the merits and (2) "will suffer irreparable injury absent a stay". *In re Forty-Eight Insulations*, 115 F.3d at 1300. But when a "legal issue does not have a clear-cut answer", the court should "rest [its] decision on whether to grant [a] stay primarily on the balance of potential harms." *A&F Enters., Inc. II v. IHOP Franchising, LLC (In re A&F Enters., Inc. II)*, 742 F.3d 763, 768 (7th Cir. 2014). And "[t]he more the balance of harms tips in favor of an injunction, the lighter the burden on the

7

party seeking the injunction to demonstrate that it will ultimately prevail." *Grote*, 708 F.3d at 853 n.2.

A

The first issue to be considered, then, is counsel's likelihood of success on appeal. To address that issue adequately one must determine the appeal's scope.

Counsel appears to have appealed only the denials of reconsideration: those are the only orders to which the notices of appeal refer. See No. 13-31965, CM-ECF No. 58, at 1 ("Credit Solutions, S.C. appeals . . . from the . . . order . . . denying the Application for Compensation entered on the 27th day of May, 2014."); No. 13-32016, CM-ECF No. 39, at 1 (same). Counsel could have timely appealed both the original denials of its applications and the denials of its motions for reconsideration, because a timely Rule 9023 motion extends the time to appeal the judgment for which reconsideration is sought. See Fed. R. Bankr. P. 8002(b). Whether the notices' failure to mention the original orders denying counsel's applications for compensation precludes an appeal of those orders, however, is a question lacking a clear answer—neither the appellate rules, the Supreme Court, nor the Seventh Circuit has resolved it. Compare Fed. R. App. P. 3(c) ("[t]he notice of the appeal must . . . designate the judgment, order, or part thereof being appealed"), with Fed. R. Bankr. P. 8001(a) (making no express requirement to "designate the judgment, order, or part thereof"). See *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 921–22 (7th Cir. 2004) (without ruling on the issue, commenting, "[w]e are doubtful that [despite the differences between Rule 8001(a) and Rule 3(c)] a notice of appeal that failed to indicate the order appealed from could nonetheless be thought to comply with [Rule 8001(a)]"); but see *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 761 (9th Cir. 1994) (party appealing bankruptcy court order to district court does not need to designate the order that the party is appealing in notice of appeal). Cf. *Brandt v. Schal Assocs., Inc.*, 854 F.2d 948, 954–55 (7th

8

Cir. 1988) (under Fed. R. App. P. 3(c), appeal is limited to those orders designated on the appellant's notice of appeal). As a result of this uncertainty, it is necessary to evaluate counsel's likelihood of succeeding both on an appeal of the denials of its motions for reconsideration and of the underlying denials of its applications for compensation.

1

If counsel's appeals are limited to the orders denying reconsideration, counsel has no chance of prevailing. Counsel did not—and could not—demonstrate that the decision for which reconsideration was sought was contrary to controlling authority. And, as explained above, bankruptcy and district courts have disagreed about whether—despite §349(b)(3)'s revesting principle—a bankruptcy court has the post-dismissal authority to allow attorneys' fees as an administrative expense and order the trustee to pay those fees from debtor funds in her possession. These disagreements underscore the apparent impossibility of showing that the rulings were clearly wrong.

Moreover, counsel could not demonstrate that the original denials worked a manifest injustice. And I alternatively concluded that counsel's applications did not allege facts sufficient to show that its services were of benefit to the debtors' bankruptcy estates as required by §330(a)(3) & (4). Considering that the district court will review the denials of counsel's motions for reconsideration for an abuse of discretion, see *Bordelon*, 233 F.3d at 529; *Moro*, 91 F.3d at 875–76, I see no chance that counsel will prevail on an appeal of those orders.

2

*a*

Counsel's likelihood of success does not much improve even if the district court concludes that counsel's notices of appeal are sufficient to preserve for appeal the original denials of the fee applications. As an initial matter, the district court may

9

conclude that counsel's failure to make any substantive argument or cite any authority until it filed its motions to reconsider constitutes forfeiture (or waiver), thus preventing appellate consideration of the new arguments and authorities raised in seeking reconsideration. See *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("[A]ny arguments . . . raised for the first time in [a] motion to reconsider are waived.").

As explained above, the only argument counsel originally made in support of its fee applications was the conclusory statement that a bankruptcy court can rule on fee applications post-dismissal as long as the case is still open. In contrast, counsel presented for the first time in seeking reconsideration the arguments that (i) a bankruptcy court has ancillary jurisdiction to allow attorneys' fees as administrative expenses post-dismissal; (ii) post-petition wages do not revest in a chapter 13 debtor pursuant to §349(b)(3); (iii) a fee application filed before a case is dismissed constitutes "cause" sufficient to order that property held by the trustee does not revest in the debtor pursuant to §349(b)(3); and (iv) a bankruptcy court has the authority to find that such cause exists post-dismissal even when the dismissal order did not originally expressly so provide.

The extent of counsel's forfeiture is not entirely clear. Counsel may be able to persuade the district court that its conclusory argument is sufficient to preserve for appeal all of the arguments made for the first time in its motions to reconsider. But arguments that are "raised in a conclusory or underdeveloped manner" are also generally held to be unavailable on appeal. See *Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 597 (7th Cir. 1999). The Seventh Circuit has instructed that "raising an issue in general terms is not sufficient to preserve specific arguments that were not previously presented." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). An appellate court, however, has the discretion to hear issues and arguments not properly raised in

10

the court below. See *Singleton v. Wulff*, 428 U.S. 106, 120–21 (1976). And the Seventh Circuit has explained that an appellate court may review on appeal a pure question of statutory interpretation not raised before the lower court when "[the] failure to present [the] ground to the [lower] court has caused no one—not the [bankruptcy court] judge, not [the appellate court], not the appellee—any harm of which the law ought to take note". *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993).

Because the original orders denying counsel's applications for compensation were based solely on the court's interpretation of the provisions of the Code, there is at least some chance that the district court may ignore any arguable forfeiture and review de novo the merits of the initial denials. See *Olson v. Risk Mgmt. Alts., Inc.*, 366 F.3d 509, 511 (7th Cir. 2004) (questions of statutory interpretation reviewed de novo). That chance requires an evaluation of counsel's likelihood of success on an appeal contesting the bases for the original denials.

*b*

Bankruptcy courts generally only have jurisdiction over matters that "affect the administration of the bankruptcy estate." *Iannini*, 487 B.R. at 438; see 28 U.S.C. §1334(a) & (b). And once a case is dismissed, the operation of §349(b) suggests that it was "as if there had been no bankruptcy." *In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1288 (7th Cir. 1995) (internal quotation marks omitted). But bankruptcy courts have the discretion to retain jurisdiction over matters related to a dismissed case when the matter is not "mooted by the dismissal of the bankruptcy itself." See *id.* at 1289. And it would seem that this principle might extend to motions pending at the time of dismissal. See *In re Sykes*, 554 F. App'x. 527, 528–29 (7th Cir. 2014); see also *Kokkonen*, 511 U.S. at 380 (ancillary jurisdiction is appropriate "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees" (citations omitted)).

11

Counsel's applications requested that I "enter an order awarding attorney fees and authorizing the trustee to pay all funds on hand to Credit Solutions, S.C. as an administrative expense". No. 13-31965, CM-ECF No. 42, at 1; No. 13-32016, CM-ECF No. 23, at 1. The question thus becomes whether the dismissals rendered counsel's requests defectively tardy under the statute or non-justiciable, and if not, whether it is appropriate for a bankruptcy court to assert ancillary jurisdiction to act on such requests.

As I explained during my ruling on counsel's motions to reconsider, the answers to these questions are not entirely clear. Section 503 provides that "[a]n entity may timely file a request for payment of an administrative expense," 11 U.S.C. §503(a), and "[a]fter notice and a hearing, there shall be allowed [] administrative expenses", §503(b). Section 1326 provides that "[i]f a plan is not confirmed, the trustee shall return . . . payments [made by the debtor pursuant to §1326(a)(1)] not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)." §1326(a)(2). And although §503(b) provides that attorneys' fees awarded to chapter 13 counsel under §330(a) shall be allowed as an administrative expense, see §503(b)(2), once a case is dismissed, property of the estate—which includes post-petition income in a chapter 13 case, see 11 U.S.C. §1306(a)(2)—revests in the entity who owned it outside of bankruptcy, see §349(b)(3).

As mentioned above, a court can prevent the revesting of property under §349(b)(3) when it has cause to do so. Section 349(b) provides that property of the estate revests in the entity who owned it outside of bankruptcy "[u]nless the court, for cause, orders otherwise". §349(b). It seems reasonable that a pending application for attorneys' fees might constitute cause sufficient under §349(b) to order that property of the estate does not revest pursuant to §349(b)(3). See *In re Lewis*, 346 B.R. at 105 & 111–

12. It does not appear, however—absent grounds under Rule 9024 to vacate a dismissal order—that a court may find that cause existed after the fact and alter a dismissal order that did not expressly provide any exception to revesting in the first instance. Compare *id.* at 103 (the court could order ex post that the dismissal order did not result in the revesting of estate property pursuant to §349(b)(3) only because counsel's application, which was filed pre-dismissal and considered at the dismissal hearing, "functioned as a request that the court order that the dismissal not result in the automatic revesting of estate property in the Debtor" and counsel's appeal of the court's denial of its application for compensation preserved this pre-dismissal request).

Absent a finding of cause, there is still room to debate whether §349(b)(3) forecloses counsel's post-dismissal applications for compensation. Section 349(b)(3) provides that upon dismissal, property of the estate "revests . . . in the entity in which such property was vested immediately before the commencement of the case". §349(b)(3). As already explained, courts have held that the revesting principle does not apply to post-petition wages because those wages didn't exist as *pre-petition* property. See *In re Garris*, 496 B.R. at 353. And, presumably, most of the payments made by a debtor to the trustee will be made with post-petition wages (although counsel here presented no evidence of the source of the payments at issue). Moreover, courts have held that even if §349(b)(3) revests post-petition earnings in the debtor, the revesting provision of §349 "is not immediate or automatic". See *Mass. Dep't. of Revenue v. Pappalardo, (In re Steenstra)*, 307 B.R. 732, 738 (B.A.P. 1st Cir. 2004). Under either of these interpretations, counsel's requests would not be defeated solely by the dismissal orders because the property held by the trustee would not revest in the debtor upon dismissal regardless of what the court directed in its dismissal orders.

Counsel may also be able to avoid the conclusion that the bankruptcy court cannot adjudicate administrative expense claims after dismissal because the applicable

13

rules and statutory provisions do not appear to place an affirmative deadline on requests for the allowance of attorneys' fees as administrative expenses. Again, §503(a) provides that an entity "may timely file a request for payment of an administrative expense". §503(a). Neither the Code nor the Bankruptcy Rules dictate when an application for attorneys' fees must be filed. See Fed. R. Bankr. P. 2016(a) (generally governing the filing of applications for attorneys' fees, but imposing no deadline on when applications must be filed); see also E.D. Wis. Bankr. L.R. 2016 (same). Thus, absent a court order setting a deadline to file a request for payment of fees allowed as administrative expenses, it appears that an application for attorneys' fees could be deemed timely as long as the case has not been closed.

As explained above, however, a number of courts have held that §349(b)(3)'s revesting principle applies to all estate property, including wages earned post-petition. See, e.g., *Williams*, 2014 WL 1457828 at *3–4 (collecting authorities). Moreover, reading §349(b)(3) in a manner that does not revest post-petition wages in debtors is inconsistent with the general purpose of §349(b), which is to "restore all property rights, as far as practicable, to the positions they occupied at the commencement of a case that was dismissed". 3 COLLIER ON BANKRUPTCY, ¶349.03[1], at 349-12 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); see also *Lugo*, 721 F.2d at 851 ("the basic purpose of dismissals is to undo the bankruptcy case as far as practicable" (internal quotation marks omitted)); *In re Groves*, 27 B.R. 866, 868 (Bankr. D. Kan. 1983).

And the statutory scheme seems to provide that funds held by the trustee again become property of the debtor when the case is dismissed, implicitly terminating any belated effort by counsel to claim them as administrative expenses. The language of §1326(a)(2) seems to only allow the trustee to turn over funds to administrative expense claimants when the court has allowed the administrative expense before dismissal. See *In re Lewis*, 346 B.R. at 111–12; see also §1326(a)(2) (providing for

14

payment of "allowed" administrative claims rather than "allowable" administrative claims). Most important, attorneys' fees requested under §330, i.e., fee requests like counsel's here, are "necessarily payable from the estate because section 503(b)(2) makes the compensation awarded an administrative expense entitled to priority under . . . section 507(a)(2)." *In re Sweports, Ltd.*, __B.R.__, No. 12-B-14254, 2014 WL 2742812, at *3 (Bankr. N.D. Ill. June 18, 2014) (internal quotation marks omitted). The estates at issue ceased to exist when the cases were dismissed. *Id.* at *2.

That said, some circuit courts of appeal have held that a bankruptcy court has jurisdiction to review fee applications after a case is dismissed. See *Dery v. Cumberland Cas. & Surety Co. (In re 5900 Assocs., Inc)*, 468 F.3d 326, 330–31 (6th Cir. 2006); *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989); *Dahlquist v. First Nat'l Bank in Sioux City (In re Dahlquist)*, 751 F.2d 295, 298 (8th Cir. 1985); *U.S.A. Motel Corp. v. Danning*, 521 F.2d 117, 119 (9th Cir. 1975). These cases, however, are best understood to only allow a bankruptcy court to determine the reasonableness of the fees under 11 U.S.C. §329 to ensure that counsel may seek to collect those fees from the debtor personally, rather than as authorizing fees to be paid from an extinguished estate. See *Barron v. Countryman*, 432 F.3d 590, 595 (§330(a) only applies to "attorney fees derived from . . . the debtor's estate" whereas §329 "authorizes the court to review all attorney compensation and agreements for reasonableness"); see also *In re Sweports*, 2014 WL 2742812, at *3–4.

What is more, the Rules of Civil and Bankruptcy Procedure generally contemplate that motions must be filed and resolved before a case is dismissed: only in limited circumstances do those rules allow a party to seek post-dismissal relief. See, e.g., Fed. R. Bankr. P. 7054 (incorporating Fed. R. Civ. P. 54(b)). Thus, it would appear that Bankruptcy Rule 2016's omission of a deadline to file applications for compensation does not entail that those applications may be filed or adjudicated after

15

the case has been dismissed. The text and structure of the rules are better understood to contemplate that post-dismissal orders of payment are extraordinary remedies appropriate only when a relevant rule or statute expressly so provides.

And a lack of any specific time limit to file an application for compensation does not necessarily suggest that a court should consider after dismissal a fee application that asks for payment by the trustee out of funds that were formerly property of the estate. See *In re Sweports*, 2014 WL 2742812, at *3–4. The limitation to exercise ancillary jurisdiction only to determine a fee's reasonableness is a sound one that complies with *Kokkonen*'s instruction. Asserting ancillary jurisdiction to rule on applications for compensation after dismissal as counsel proposed in these cases places additional burdens on the court and the administration of its cases; such a practice does not allow a court to "function successfully". See *Kokkonen*, 511 U.S. at 378–80.

Indeed, counsel's inability to obtain payment from funds held by the trustee is wholly self-created. As I previously alluded to, other chapter 13 debtors' counsel routinely obtain payment from trustee-held funds by either (i) acting promptly to ensure that their fee application is decided before the case is dismissed or (ii) filing a response to the trustee's motion to dismiss that asks the court to delay entry of a dismissal order until the fee application—which typically is filed soon after the trustee seeks dismissal—is adjudicated. See, e.g., No. 14-20611, Response to Trustee's Motion to Dismiss, May 29, 2014, CM-ECF No. 20, at 1 (Bankr. E.D. Wis.) (noting the debtor is not contesting dismissal but counsel "is requesting that dismissal be stayed through and including June 24, 2014 to allow the pending Application for Compensation to be resolved.").

In addition to complying with §349(b), these alternative means of pursuing the payment of fees from trustee-held funds minimize administrative difficulties for the court and the chapter 13 standing trustees. When counsel follows the course taken in

16

these cases of filing a fee application on 14-day notice near the expiration of the dismissal motion's 21-day notice period, there is nothing to flag for the court or the trustee the fact that counsel is asking to be paid funds from estate property. Given the substantial number of unopposed dismissal motions in chapter 13 cases, the mere pendency of the fee application is simply insufficient to make the court aware that there may be cause to delay the revesting of the trustee-held funds upon dismissal. But if counsel files a fee application soon after the trustee moves for dismissal, the fee application may be presented for adjudication before the trustee's motion to dismiss is ripe for decision. Alternatively, counsel could file a separate motion to expedite its fee application, which would also bring the fee application to the court's attention before the court is presented with the trustee's dismissal order. Or, as mentioned above, counsel can file a response to the trustee's motion to dismiss that requests a delay in the dismissal order or, potentially, a dismissal order providing pursuant to §349(b) that debtors' funds in the trustee's possession will not revest in the debtor.

Any of these courses would likely make the court and the trustee aware of counsel's application to be paid out of trustee-held funds without imposing substantial administrative costs. Counsel's preferred approach of filing fee applications noticed to be heard only after the case is likely to be dismissed requires either (i) the court to undertake a search for fee applications each time a chapter 13 trustee files an unopposed motion to dismiss and then either delay dismissal or determine whether there is cause to delay revesting, or (ii) the chapter 13 trustees to hold debtors' funds after dismissal until they are sure that they will not be required to turn the funds over to debtors' counsel based on a post-dismissal allowance of an administrative claim.

Given the large number of dismissal motions, the administrative burden imposed by either course is significant. The volume of chapter 13 cases—over 14,000 are currently pending—requires efficient methods of handling frequent motions such as

uncontested motions to dismiss for failure to perform the plan. And the burden that counsel's preferred course would impose on the trustees is substantial—they could no longer rely on a dismissal order to commence the process of returning to the debtor funds not then payable to creditors or allowed administrative claims pursuant to §1326(a). Instead, the trustees, like the court, would be required to search the docket in each case in an attempt to determine whether debtor's counsel had filed a fee application after the trustee had moved to dismiss that might ultimately yield a post-dismissal order requiring the trustee to pay funds on hand to counsel, rather than to the debtor.

Debtor's counsel is in the best position to know whether the debtor is unlikely to oppose dismissal and whether counsel seeks to recover fees out of the estate funds held by the trustee. Thus, it is far more efficient and practical to adhere to the course suggested by §§349(b) and 1326: the trustee must return to the debtor funds held by the trustee unless the court *before dismissing the case* has either allowed an administrative expense claim or has ordered the trustee not to return funds to the debtor until the court resolves any pending fee application. Neither alternative forecloses counsel's ability to be paid out of trustee-held funds; he must simply act promptly in filing fee applications or identifying his desire to pursue the payment of fees as an administrative expense in connection with a trustee's motion to dismiss. As result, it appears inappropriate to assert ancillary jurisdiction to act on fee applications after dismissal, as counsel proposes in these cases, even if the court has the authority to do so. See *In re Ragland*, 2006 WL 1997416 at *8 (The "exercise of ancillary jurisdiction is inappropriate[,] if not precluded[,]" either when a party does not seek disgorgement of fees, when a fee application was not filed or ruled on before dismissal, or when the bankruptcy court does not retain jurisdiction over estate property in the dismissal order.).

B

Although counsel's chance of success appears far less than "substantial", see *In re Forty-Eight Insulations*, 115 F.3d at 1301, counsel may succeed on its appeal if the district court rules that the notice of appeal encompasses the original orders denying its fee applications. Reviewing those denials de novo in the absence of controlling authority, the district court may be persuaded by the decisions that have concluded that a bankruptcy court can grant an application for attorneys' fees even after the case is dismissed and order the trustee to turn over the debtor's funds to counsel in payment—even though such a ruling appears contrary to the statutory intent that dismissal "undoes" the bankruptcy and likely will impose administrative burdens on the bankruptcy court and the trustees that might be more efficiently borne by debtor's counsel.

Because the underlying merits question lacks even an arguably clear answer, presuming that question is preserved for appeal, the "decision on whether to grant [a] stay" should be based "primarily on the balance of potential harms." *A&F Enters., Inc. II*, 742 F.3d at 768. The potential harms that must be balanced are the harms that will result to each party involved in the litigation and any harm that may come to the public interest if a stay is granted. *Id.* at 766; *In re Forty-Eight Insulations*, 115 F.3d at 1300.

Counsel argues in its motion that its requested stay is appropriate because without the stay the trustee will disburse the funds and moot its appeal. It is not clear that counsel faces irreparable harm, however, even if it can't obtain payment out of the trustee-held funds. Counsel, like any other creditor, can attempt to collect its attorneys' fees from the debtors under state law once the chapter 13 proceeding is dismissed. See *Iannini*, 487 B.R. at 440 n.8. Certainly, however, one presumes that seeking to recover fees from debtors outside of bankruptcy will be far more difficult than seeking payment

19

out of the debtor's funds held by the trustee—not only will post-bankruptcy recovery potentially require a separate proceeding, but counsel will also be attempting to collect from individuals who have failed to make the payments required by their chapter 13 debt adjustment plans.

If the stay is granted, on the other hand, the debtors will not recover the excess funds from the trustee. But, putting aside the potential *sua sponte* inquiry into the fees' reasonableness, the debtors presumptively owe that money to counsel. Although ultimately denied, counsel's fee requests were unopposed. Thus, any harm that the debtors face is insubstantial: based on the current record, granting a stay pending appeal will likely only prevent the debtors from receiving money that they owe counsel anyway.

Moreover, granting the stay will impose little harm on the trustee. She will simply be required to hold the funds already paid by the debtors. I have already ordered a stay on the disbursement of those funds in these two cases: the administrative expense of continuing to hold these funds is likely miniscule. The potential harm to the public interest also seems inconsequential.

Counsel is the only party that potentially faces harm. If I do not grant its request for a stay, it may be denied the opportunity to collect the fees owed from funds held by the trustee. Denying counsel this opportunity will effectively deprive it of the ability to collect those fees without additional costs and uncertainty. The costs of pursuing payment from the debtors in another forum and the apparent difficulties in collection supports a finding of at least some harm to counsel. The other parties and public interest do not seem to face much, if any, harm if the stay is granted. The balance of harms favors granting the requested stay as long as counsel can show even a minute chance of succeeding on appeal.

As discussed above, counsel has a minute chance of succeeding on appeal as the

Case 13-31965-gmh    Doc 64    Filed 06/26/14    Page 20 of 21

underlying legal question has no clear answer. Thus, counsel's likelihood of success on appeal satisfies this extremely low standard. I conclude that counsel's likelihood of success on the merits of its appeal balanced against the chance of any harm to the debtors, the trustee, or the public interest is sufficient to justify granting counsel's request for a stay pending appeal.

III

For these reasons, counsel's motion to stay the trustee's disbursement of the debtors' funds is granted. The court will issue orders in both *Ward* and *Simpson* consistent with this decision.

June 26, 2014

G. Michael Halfenger
United States Bankruptcy Judge